UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MARGARET SUTTON                          CIVIL ACTION NO. 21-cv-4418

VERSUS                                   MAGISTRATE JUDGE HORNSBY

ELDORADO CASINO SHREVEPORT JOINT
VENTURE ET AL

## MEMORANDUM RULING

### Introduction

Margaret Sutton ("Plaintiff") was a customer at the Eldorado Casino when she fell and was injured.  She filed this civil action in state court against the casino and its insurer.  The defendants removed the case based on diversity jurisdiction.  With the consent of the parties and pursuant to 28 U.S.C. § 636(c), the case was referred to the undersigned magistrate judge to conduct all proceedings.  Docs. 17 & 19.  Before the court is a Motion for Summary Judgment (Doc. 24) by the defendants.  For the reasons that follow, the motion will be granted.

### Summary Judgment Evidence

Plaintiff and her husband visited the Eldorado Casino in Shreveport in November 2020 and played slot machines for about an hour.  They were leaving at about 6:00 p.m. when Plaintiff fell near the transition between the carpeted gaming area and a hard surface marble or tile floor.  Plaintiff, who was born in 1963, was wearing tennis shoes.  She did not describe any physical limitations during her deposition, though she did state that she receives disability benefits based on a mental issue.   An employee who   checks

identification for those entering the gaming area was stationed nearby, and there was clear

video of the entrance area where the fall happened.

Defense counsel questioned Plaintiff about the accident:

Q.   Tell me what you remember as far as the accident?

A.   We was on our way out the door.  We was fixing to get ready to leave, and the guy right there -- it was a little smush going across the threshold, and I tripped on it and fell.

Q.   What do you mean "smush"?

A.   It was like a little soft spot.

Q.   Soft spot.  Describe what you mean by "soft spot."

A.   Okay.  The threshold right there, and it's like a little -- when you walk, your feet would kind of, like, go down, and I tripped over the threshold when I was walking by.

Q.   Was this -- just so I'm understanding, was this like a substance on the floor or –

A.   No, it's not.  It wasn't nothing on the floor.  It was a -- I think it was a little soft spot up under the carpet.  You know what I'm saying, a soft -- yeah, a little soft spot like something wasn't right up under there when I walked by.

Q.   So you didn't fall or slip and fall in a substance?

A.   No, sir.

Q.   So you would describe this as a trip and fall?

A.   Yes, sir.

Q.   Over a soft spot under the carpet?

A.   Going across the threshold.

Plaintiff was then shown surveillance video of the accident, and defense counsel suggested that it showed that Plaintiff fell on the tile area rather than the carpet or even the transition area.  This exchange followed:

> Q. And if you watch your feet there, it looks like you're going to fall on the tile.  Is that what you remember?
>
> A. It was -- I know it was the threshold. When my back feet come across there, that's where I stumbled -- I mean, my back there on the carpet and there's a threshold right there.
>
> Q. Your foot was on the tile, wasn't it?
>
> MS. GAILMOR: Object to form.
>
> MR. CHIARTANO: Can we see it again?
>
> A. Right there.  I see it.
>
> BY MR. WOLF:
>
> Q. So was your -- was your foot -- did it hit the tile and you fell?
>
> A. It happened so fast.  I mean, like I said, I know when I came across there and …
>
> MR. CHIARTANO: Can we see it one more time.  Keep talking.
>
> A. I know as I came across there, I stumbled.
>
> BY MR WOLF:
>
> Q Your foot, didn't it hit the tile?
>
> A. Yes, sir.
>
> Q. Okay.  So what was the threshold you were talking about?
>
> A. Back where my foot was at first, my back foot, right there.
>
> Q. Okay.· So you've got your right foot on the and your left foot is where?

A.   It's on the thing.

There was then an objection and further viewing of the video.   This exchange then occurred:

Q.   … I'll hit play.  So did your left foot hit the tile?

A.   Yes, sir.

Q.   So it didn't hit the threshold you were talking about?

A.   Yes, sir, it did, but I -- I can't hardly remember.

Q.   But you don't think it was you tripped on the threshold, it was actually the tile?

A.   The tile.

Q.   Was there anything on the tile?

A.   No, sir.

Q.   Are you aware of anyone else tripping on that tile?

A.   No, sir.

Defendants submitted a sworn copy of surveillance video that captured the accident. It depicts Plaintiff walking at an ordinary pace on the carpeted floor heading in the direction of the hard surface floor.  Plaintiff's right (lead) foot stepped firmly onto the hard surface, as her left (rear) foot was at approximately the border between the carpet and the hard surface.  Plaintiff then stepped forward with her left foot onto the hard surface, and her left shoe appears to have stuck to or grabbed the hard surface, and Plaintiff tumbled forward. At the moment Plaintiff's fall began, both of her feet were approximately two feet distance onto the hard surface and well clear of the carpet or the threshold area.  There is no

indication on the video that a soft or smushy area on the carpet or at the threshold had any connection to the fall.

**Summary Judgment Burdens**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the moving party makes such a showing, "[t]he non-moving party must then come forward with specific facts showing there is a genuine issue for trial." Washburn v. Harvey, 504 F.3d 505, 508 (5th Cir. 2007).  The court will "review evidence in the light most favorable to the nonmoving party, but conclusional allegations and unsubstantiated assertions may not be relied on as evidence by the nonmoving party." Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011).

**Analysis**

Under Louisiana law, a merchant owes a duty to all persons who use its premises "to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition."  La. R.S. 9:2800.6(A).  Regardless of a merchant's affirmative duty to keep the premises in a reasonably safe condition, a merchant is not the insurer of the safety of his patrons.  Noel v. Target Corp. of Minn., 2007 WL 2572308, *1 (W.D. La.  2007). To impose liability on a merchant under the statute, the claimant has the burden of proving all of the following:

(1)   The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2)   The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3)   The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

La. R.S. 9:2800.6(B).

Defendants' motion challenges Plaintiff's ability to meet her burden of proving the first or third elements.  Specially, the motion argues that Plaintiff cannot meet her burden of proof that (1) the floor had a condition that presented an unreasonable risk of harm and that the risk of harm was reasonably foreseeable or (2) the casino failed to exercise reasonable care relative to the condition.

There is no genuine dispute of material fact with regard to first element—a condition that presented an unreasonable risk of harm—which is enough to warrant summary judgment for the defendants.  Plaintiff did testify that there was a "little smush going across the threshold" or "a little soft spot up under the carpet," but the video presents undeniable evidence that the fall did not take place or even begin on the carpet or the threshold between the two surfaces.  Plaintiff was walking perfectly fine until her left foot stopped when it encountered the hard surface floor.  Plaintiff admitted as much later in her deposition when she agreed that she tripped on the tile rather than the threshold.  She also testified that she did not know of anything wrong with the tile.  Anyone who has spent much time walking on hard, smooth surfaces in rubber-soled shoes has likely had a similar experience with the shoe "grabbing" the floor before the stride is completed.

Plaintiff argues that the defendants identified several potential witnesses in their written discovery, but none of them offered affidavits in support of their motion.  But a

defendant does not have to present all of its evidence or disprove a plaintiff's claim to prevail on a motion for summary judgment.  It merely need make an adequate challenge to the plaintiff's ability to prove an element of her claim, which then shifts the burden to the plaintiff.  The same is true with respect to Plaintiff's arguments that no defense witness or expert testified that the lighting was sufficient, that the carpet was not defective, or that the area was not one where other accidents had happened.  The defendant need not disprove every conceivable theory on which a Plaintiff might rely.

Plaintiff states that the casino's procedures manual provides that all accidents are investigated, and she questions why an investigative report was not submitted if it was favorable to the defense.  Once again, a defendant need not present all of its potential trial evidence to prevail on a motion for summary judgment.  Once the plaintiff's ability to prove an essential element of her claim is squarely challenged, the burden is on the plaintiff to create a genuine dispute of material fact.

Plaintiff argues that "the gap created by softer carpet next to the transition and the tile or marble floor, create questions of fact as to whether the defendants' premises were reasonably safe."  She also complains that the "only evidence" the casino puts forth is the surveillance video.  The video, however, can serve as strong summary judgment evidence. In  Scott v. Harris, 127 S.Ct. 1769 (2007) the plaintiff in a police chase case testified that he was driving quite safely, not a threat to pedestrians or other drivers, and slowed for turns and intersections.  A video told a different story and clearly depicted the plaintiff's car racing down narrow roads in the dead of night at shockingly fast  speeds, swerving around more than a dozen cars, forcing cars off the road, running multiple red lights, and otherwise

driving dangerously.  The Court acknowledged that facts must be viewed in the light most favorable to the non-moving party if there is a genuine dispute as to those facts, but it held that there was no genuine dispute when the story told by the plaintiff was "blatantly contradicted by the record, so that no reasonable jury could believe it."  Scott, 127 S.Ct. at 1776.

The Fifth Circuit has cited Scott and held that, at the summary judgment stage, "facts evident from video recordings taken at the scene" may overcome a plaintiff's description of the facts.  Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011).  The court need not accept a plaintiff's version of the facts for summary judgment purposes when it is "blatantly contradicted and utterly discredited by video recordings."  Garza v. Briones, 943 F.3d 740, 744 (5th Cir. 2019).  In Garza, still photos and a witness account relied upon by the plaintiff could not defeat summary judgment when they were directly contradicted by dashcam footage that confirmed the police officers' accounts.

The Fifth Circuit has applied Scott in slip and fall cases and affirmed summary judgment for the merchant when the plaintiff's testimony was squarely contradicted by video evidence.  Agbonzee v. Wal-Mart Stores Texas, L.L.C. #772, 2022 WL 3137428 (5th Cir. 2022) (looking to video to determine cause of the spill and how long it was present before the fall); Romano v. Jazz Casino Co., L.L.C., 2022 WL 989480, *2 (5th Cir. 2022), cert. denied, 2022 WL 4652125 (2022) ("Appellants' version of the facts is contradicted by the video"; video showed casino patron tripped over open and obvious vehicle display and not a dangerously positioned electrical cord.); McDowell v. Wal-Mart Stores, Inc., 811 F. Appx. 881, 884 (5th Cir. 2020) ("McDowell denies that any other customers were on

the aisle at that time. But the surveillance footage contradicts her claim."); and Granados v. Wal-Mart Stores, Inc., 653 F. Appx. 366 (5th Cir. 2016) ("even if this employee's presence in the aisle could conceivably support an inference of actual knowledge, the video demonstrates clearly that she was *not* in the aisle in which Granados slipped, but the aisle next to it, and was not looking in the direction of the puddle at all").

Plaintiff tries to shoulder her summary judgment burden by her testimony that there was a soft area of the carpet near the transition. The video evidence shows plainly that any soft area in the carpet had nothing to do with her accident. The accident took place while Plaintiff was completely on the hard surface. Any contention to the contrary is blatantly contradicted by the video recording. To be sure, surveillance videos are sometimes of poor quality or subject to different interpretations, but this is not such a case. No reasonable juror could find, based on the clear video evidence, that Plaintiff's fall was caused by anything to do with the carpeted area or that there was otherwise a condition in the casino premises that presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable to the casino. This was simply an unfortunate accident for which the casino bears no blame. For these reasons, **Defendants' Motion for Summary Judgment (Doc. 24) is granted**.[1] A judgment consistent with this ruling will be entered.

---

[1] Defendants argued for the first time in their reply memorandum that Plaintiff could not show that the casino had actual or constructive notice of the alleged soft spot in the carpet. The issue need not be addressed to justify summary judgment. Furthermore, "[a]s a general matter, a district court is not required to address new legal issues raised only in a reply brief." Magnolia Island Plantation, L.L.C. v. Whittington, 29 F.4th 246, 251-52 (5th Cir. 2022).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 27th day of

December, 2022.

Mark L. Hornsby
U.S. Magistrate Judge